b

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| CRAIG JALBERT, TRUSTEE, o/b/o GERMAN PELLETS LOUISIANA, L.L.C. AND LOUISIANA PELLETS, INC. | CIVIL ACTION 1:18-CV-00788 |
| VERSUS | JUDGE DRELL |
| PETER LEIBOLD, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Plaintiff Trustee filed a Motion to Remand (Doc. 8), and Defendants filed Motions to Dismiss. (Docs. 31, 33, 34, 35). Because removal was defective, Plaintiff's Motion to Remand (Doc. 8) should be GRANTED, the case should be REMANDED, and Defendants' Motions to Dismiss should be DENIED FOR LACK OF JURISDICTION. (Docs. 31, 33, 34, 35).

I.   Background

Plaintiff Craig Jalbert, the Chapter 11 liquidating trustee (the "Trustee") for German Pellets Louisiana, L.L.C. ("GPLA") and Louisiana Pellets, Inc. ("LP"), filed a petition for damages and injunctive relief in the 28th Louisiana Judicial District Court in LaSalle Parish. (Doc. 1-1). The named defendants are Peter Leibold, Anna Kathrin Leibold, Michael Leibold, Meranda Hyman, GP GmbH (parent company of SPLA and LAP), and VOV GmbH ("VOV"). GPLA and LP defaulted on their obligations to bond holders in 2016 and filed voluntary petitions for Chapter 11 relief in the United States Bankruptcy Court for the Western District of Louisiana. Jalbert

was named their Trustee in a confirmed joint chapter 11 plan of liquidation.[1] (Doc. 1-4, p. 23/28)). At the same time, their parent company, GP GmbH filed for bankruptcy protection in Germany (Doc. 1-1).

The Leibolds and Hyman are four former officers and directors of LP and GPLA (Hyman was the most senior accountant). (Doc. 1-1). VOV is an insurance association based in Cologne, Germany. VOV represents the six underwriters that provided "officer and director coverage" for policyholder GP GmbH and its subsidiaries, LP and GPLA. (Doc. 1-2, pp. 2-3, 30-33/40).

The Trustee filed a post-confirmation complaint in a Louisiana state court, seeking monetary damages and alleging Defendants breached their fiduciary duties by transferring millions of dollars from LP and GPLA to GP GmbH for no consideration. The Trustee contends Defendants placed the money from the LP and GPLA accounts beyond the reach of creditors and bondholders in the United States.

---

[1] A chapter 11 plan of reorganization or liquidation settles the estate's causes of action or retains those causes of action for enforcement by the debtor, the trustee, or a representative of the estate appointed for the purpose of enforcing the retained claims. See 11 U.S.C. § 1123(b)(3); see also Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill, 561 F.3d 377, 387 (5th Cir. 2009).

In a liquidation plan, "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend." In re Boston Regional Medical Center, Inc., 410 F.3d 100, 106 (1st Cir. 2005). To achieve the plan's goals, the retained assets of the estate may be transferred to a liquidating trust. See 11 U.S.C. § 1123(a)(5)(B); see also Torch Liquidating Trust ex rel. Bridge Associates L.L.C., 561 F.3d at 387. Section 1123 allows a plan to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims for breach of fiduciary duties owed to the corporation and to distribute the proceeds of successful suits. See Torch Liquidating Trust ex rel. Bridge Associates L.L.C., 561 F.3d at 387.

The Trustee also seeks injunctive relief to preclude VOV from paying its policy limits to GP GmbH, to the detriment of LP's and GPLA's creditors.

Hyman answered the petition and made a reconventional demand against the Trustee, the Leibolds, GP GmbH, and VOV. (Doc. 1-3). Hyman seeks monetary damages, contending she was never an officer, director, or shareholder of GPLA, has no liability as a corporate actor, and was fraudulently joined as a defendant in this action. (Doc. 1-3).

VOV removed alleging federal jurisdiction pursuant to: (1) 9 U.S.C. § 203 and § 205 because this matter relates to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. § 2517, T.I.A.S. § 6997, 330 U.N.T.S. § 3 (9 U.S.C. §§ 201, et seq.); (2) 28 U.S.C. § 1334 because this case is "related to" a case under title 11; and (3) 28 U.S.C. § 1332 because there is diversity in citizenship.

Defendants Hyman and GP GmbH did not consent to removal. GP GmbH has never appeared.

Both the Trustee and Hyman admit they never served GP GmbH.[2] (Docs. 27, 28). Since GP GmbH was never served, its consent to removal is not required. See 28 U.S.C. § 1446(b)(2)(A).

---

[2] In response to a Court Order to show service (Doc. 22), Plaintiff Trustee now contends GP GmbH is "not a named defendant in this action," despite having named GP GmbH as a defendant in Paragraph 12 of his petition and having alleged claims against it in Paragraphs 15-8, 25-26, and 33. (Doc. 27). Hyman relied to her detriment on the fact that Plaintiff named GP GmbH as a defendant in the complaints. Hyman's failure to notice that GP GmbH had not been served is due to the fact that Plaintiff did not file any proofs of service or waivers until ordered to do so by this Court (Doc. 22).

The Trustee filed a Motion to Remand (Docs. 8, 11), which the Leibolds and VOV oppose. (Docs.13, 14). The Trustee filed a reply brief. (Doc. 17). The Leibolds and VOV did not answer the complaint.

Pursuant to an order of this Court. (Doc. 22), Defendants were ordered to show the citizenship of each party with specificity for purposes of diversity jurisdiction, and to respond to the Complaint and Third-Party Demand. Defendants filed a response to the Order to set forth the parties' citizenship (Doc. 30). Defendants also filed Motions to Dismiss the complaint and Hyman's cross-claim. (Docs. 31, 33, 34, 35).

### A. Removal was defective.

Removal was defective because Hyman did not consent to removal by VOV.

Pursuant to 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." In the Fifth Circuit, all served defendants must join in the petition for removal within thirty days of service on the first defendant, and if consent of all served defendants is not timely obtained, the removal is procedurally defective.[3] See Doe v. Kerwood, 969 F.2d 165, 167, 169 (5th Cir. 1992); see also Ortiz v. Young, 431 Fed. Appx. 306, 307 (5th Cir. 2011), cert. den., 565 U.S. 1234 (2012). This "rule of unanimity" requires that there be "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have the authority to do

---

[3] A defendant is free to amend a notice of removal within the thirty-day period, but once that thirty-day period has expired, amendment is not available to cure a substantive defect in removal proceedings. See Moody v. Commercial Ins. Co. of Newark, N.J., 753 F. Supp. 198, 201–02 (N.D. Tex. 1990); see also Moreno Energy, Inc., 884 F. Supp. 2d at 582.

so, that it has actually consented to such action"; each defendant does not need to sign the notice of removal to effect removal. See Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988); see also Moreno Energy, Inc. v. Marathon Oil Co., 884 F. Supp. 2d 577, 582–83 (S.D. Tex. 2012). There need only be some timely filed written indication from each defendant or from someone purporting to represent that defendant formally. See Getty Oil Corp., 841 F.2d at 1262 n. 11; Moreno Energy, Inc., 884 F. Supp. 2d at 582.

There are three well-recognized exceptions to the rule that all defendants must join in the removal petitions to effect removal: (1) where the defendant was not yet served with process at the time the removal petition was filed; (2) where a defendant is merely a nominal, unnecessary, or formal party-defendant; and (3) where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c). See Ashford v. Aeroframe Services, L.L.C., 2015 WL 2089994, *3 (W.D. La. 2015) (citing Jones v. Houston Independent School Dist., 979 F.2d 1004, 1007 (5th Cir. 1992)); see also Moreno Energy, Inc. 884 F. Supp. 2d at 582; Moody, 753 F. Supp. 198, 200 (N.D. Tex. 1990).

In this case, although there is no record evidence that Hyman was ever served, Hyman voluntarily appeared by answering the complaint in state court. The case was removed on June 13, 2018, and Hyman did not indicate her consent to removal.

However, Hyman contends in her answer. and Defendants argue. that Hyman was fraudulently joined to defeat diversity. The Trustee contends in the complaint that Hyman is domiciled in Louisiana.

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court. See Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005) (citing Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004), cert. den., 544 U.S. 992 (2005)). The first—actual fraud—is not at issue in this case. With the second, the Court must determine whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, or, stated differently, there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. See id. The burden of proof is on the removing party. See Guillory, 434 F.3d at 308.

To determine the validity of an improper joinder claim, the Court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact and all ambiguities in the controlling state law in the plaintiff's favor. See Guillory, 434 F.3d at 308. The Court does not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that it might do so. See Guillory, 434 F.3d at 309.

A summary inquiry is appropriate to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. The Court's inability to decide plaintiff's right to recovery in a summary manner itself points to an inability of the removing party to carry its burden. See Guillory, 434 F.3d at 309 (citing Smallwood, 385 F.3d at 574).

A court may make its inquiry in one of two ways. See Smallwood, 385 F.3d at 574. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. See Smallwood, 385 F.3d at 574. There are also cases in which a plaintiff has stated a claim but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.[4] See id.

The Trustee claims Hyman breached her fiduciary duty to GPLA and LP and committed corporate waste (Doc. 11, p. 28/32)). The Trustee alleges in the complaint that Hyman "processed and caused invoices to be paid for GPLA." The Trustee claims Hyman and the other Defendants: "caused significant sums to be transferred from the account of GPLA to GP GmbH without documentation of why these payments were made"; "caused GPLA to make transfers, most during a time that GPLA and Louisiana Pellets did not have sufficient case either to operate or to finish the ongoing construction"; "allow[ed] millions of dollars to be transferred out of GPLA and Louisiana Pellets and to GP GmbH without proper documentation or value provided";

---

[4] A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. See Smallwood, 385 F.3d at 574. Any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. See Smallwood, 385 F.3d at 574.

and "fail[ed] to conserve and protect GPLA and Louisiana Pellets' cash flow revenues." (Doc. 1-1). The Trustee also alleges that Hyman and the other Defendants: owed a duty of reasonable prudence to GPLA and LP; acted negligently in the management of, and mismanaged, GPLA and LP business; and wasted GPLA and LP assets. (Doc. 1-1).

Hyman contends she was not an officer, director, or shareholder of LP or GPLA; denies she was the Chief Accounting Officer; contends she had no discretionary authority over payment of invoices; and argues she has no liability as a corporate actor. (Doc. 1-3). Hyman contends she was merely an accountant.

The Trustee contends Hyman "was the most senior accounting person working in Urania [for LP and GPLA]" and that she "processed and caused invoices to be paid for GPLA."[5] (Doc. 1-1, p. 9/13). The Trustee also points out that Hyman has not denied that she was an "officer, director, or shareholder" of LP; she only denied that allegation as to GPLA. Also, Hyman did not deny that she was involved in the undocumented, or inadequately documented, transfer of funds from LP and GPLA to GP GmbH.

The Trustee contends in the complaint that the insured persons under the VOV policy include members of the management of LP and GPLA. (Doc. 101, p. 14/18). Hyman disclaims being an "officer, director, or shareholder of GPLA," but does not

---

[5] The Trustee contends those invoices included prepayments to construction vendors for services that were never performed, equipment that was never delivered, and work that was improperly performed. (Doc. 1-1, p. 10/18).

8

deny she was a manager of GPLA, and does not deny being she was a manager, officer, director, or shareholder of LP. (Doc. 1-3).

The Trustee contends that, under Delaware law, a chief accounting officer is defined as an officer of a corporation. See 10 Del. C. § 3114(b)(1). An officer of a corporation has fiduciary duties of care and loyalty to the corporation that are identical to those owed by corporate directors. See Gantler v. Stephens, 965 A.2d 695, 708-709 (Del. 2009).

It is noted that VOV's policy states at § 5.2 (Doc. 1-2, p. 28/40): "Insurance cover shall also extend to natural persons acting as universal agents ("Generalbevollmächtigte"), persons vested with a commercial power of attorney ("Prokuristen") or executive employees of the policy holder or of a subsidiary, or as the holder of a comparable position under foreign law. In the case of doubt as to an individual's position as an executive employee, the most favorable interpretation of employment law interpretation applicable to that person shall apply." Section 5.3 provides coverage for employees who are members of *de facto* governing bodies of the policyholder or a subsidiary, and § 5.4 provides coverage for interim managers, and for shadow directors, company secretaries, and senior accounting officers to the extent that common law is involved. (Doc. 1-2, p. 28/40).

The Trustee has adequately alleged breach of fiduciary duties and corporate waste by Hyman. Viewing the factual allegations in the light most favorable to the Plaintiff, Defendants have not carried their burden of proving there is no possibility

9

of recovery by the Trustee against Hyman. Therefore, Defendants have not proven Hyman was improperly joined as a Defendant.

Accordingly, the removal is procedurally defective and the case should be remanded.

## II. Conclusion

Because removal was defective, IT IS RECOMMENDED that Plaintiff's Motion to Remand (Doc. 8) be GRANTED and this case be REMANDED to the Louisiana 28th Judicial District Court in LaSalle Parish.

IT IS FURTHER RECOMMENDED that Defendants' Motions to Dismiss (Docs. 31, 33, 34, 35) be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __13th__ day of February, 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge